IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-02692-PAB

ERICA VIGIL, on behalf of B.S.P., a Minor,

        Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

        Defendant.

---

**ORDER**

---

This matter is before the Court on plaintiff Erica Vigil's complaint [Docket No. 1] filed on October 1, 2014.  Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim, brought on behalf of her daughter, B.S.P., for disability insurance benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I.  BACKGROUND**

On February 15, 2012, plaintiff applied for supplemental security income under Title XVI of the Act on behalf of B.S.P., a child under the age of eighteen.  R. at 29.  Plaintiff alleged that B.S.P. had been disabled since January 1, 2010.  *Id.*  After an initial administrative denial of her claim, plaintiff appeared at a hearing conducted by an Administrative Law Judge ("ALJ") on March 18, 2013.  *Id.*  On April 17, 2013, the ALJ denied plaintiff's claim.  *Id.* at 42.  The ALJ found that plaintiff had the severe

impairments of right eye vision loss and learning disorder. *Id.* at 32. The ALJ found that these impairments, alone or in combination, did not meet, medically equal, or functionally equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. *Id.* at 34-36.

The Appeals Council denied plaintiff's request for review of the ALJ's decision on August 5, 2014 and affirmed its denial on August 21, 2014. R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine

the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## B.  Evaluation of ALJ's Decision

A child under the age of eighteen is disabled within the meaning of the Act if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner has established a three-step sequential evaluation process to determine whether a child claimant is disabled. 20 C.F.R. § 416.924(a); *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001). Under this test, a child is disabled if (1) the child is not engaged in substantial gainful activity, (2) the child has an impairment or combination of impairments that is severe, and (3) the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404. 20 C.F.R. § 416.924(a); *Briggs*, 248 F.3d at 1237. "In making the third determination – whether a child's impairment meets or equals a listed impairment – the ALJ must consider whether the impairment, alone or in combination with another impairment, medically equals, or functionally equals the listings." *Briggs*, 248 F.3d at 1237 (quotations omitted).

A child's impairment or combination of impairments functionally equals the listings and, thus, constitutes a disability under the Act, when it results in "marked" limitations in two domains or an "extreme" limitation in one domain, as described in 20 C.F.R. § 416.926a.  Under § 416.926a(b), the Commissioner assesses how a child functions in his or her activities "in terms of six domains: (i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for [her]self; and, (vi) Health and physical well-being." *Briggs*, 248 F.3d at 1237 (quoting 20 C.F.R. § 416.926a(b)(1)(i)-(vi)).

## C.  The ALJ's Decision

Plaintiff argues that the ALJ erred in finding that B.S.P.'s impairments do not meet or equal Listings 112.02 and 112.05.  *See* Docket No. 15 at 22-29.  The relevant evidence of record is as follows.  B.S.P. was born prematurely and had a lack of oxygen at birth.  R. at 239.  B.S.P. repeated kindergarten and, in 2009, she lost vision in one eye while participating in wrestling.  *Id.* at 207.[1]  Reading tests administered in the second grade placed B.S.P. in the 14th percentile in the fall, the 8th percentile in winter, and the 3rd percentile in spring, which her evaluation team described as a "considerable" decline in skills.  *Id.* at 206.  B.S.P.'s results in Northwest Evaluation

---

[1]Although there is no dispute that B.S.P. is blind in one eye, it is unclear whether the affected eye is her right or left eye. *Compare* R. at 207 (noting that plaintiff lost sight due to "retina damage to her left eye"); 218 ("Passed Right Eye - 20/20 Acuity . . . Failed Left Eye - Injury to retna [sic] during a wrestling event at school in 2009"); 249 ("Her left eye has no useful vision due to sports injury"); *with* R. at 122 ("the claimant is blind in her right eye"); 237 ("the client is blind in her right eye.  It shows in the records [as] her left eye.  Mother says it is the right eye.").

Association ("NWEA") assessment testing during second grade were as follows:

|  | Fall | Winter | Spring |
|---|---|---|---|
| Reading | 1st percentile | 4th percentile | 22nd percentile |
| Math | 11th percentile | 1st percentile | 70th percentile |
| Language | 1st percentile | 1st percentile | 16th percentile |

*Id.* at 207.  In third grade, B.S.P. was referred for special education due to "problems with basic reading skills, reading fluency, reading comprehension, listening comprehension, math calculation, math problem solving, written expression and her behavior[.]"  *Id.* at 206.

As part of her Multidisciplinary Evaluation Team ("MET") evaluation and report, B.S.P.'s teachers, her mother, and B.S.P. each completed a Behavior Assessment System for Children, Second Edition ("BASC-2") in November 2011, when B.S.P. was in third grade.  R. at 208.  Under the BASC-2, scores in the "At-Risk" range "may identify a significant problem that may not be severe enough to require formal treatment but high enough to warrant careful monitoring," while scores in the "Clinically Significant" range "suggest a high level of maladjustment."  *Id.*  The BASC-2 has five "composites," Adaptive Skills, Behavioral Symptoms Index, Externalizing Problems, Internalizing Problems, and School Problems, each of which contains several "subscales."  *Id.* at 208-09.  B.S.P.'s homeroom teacher placed her in the "clinically significant" range in the externalizing problems, behavioral symptoms, and school problems composites, and in the "at risk" range in the internalizing problems and adaptive skills composites.  *Id*. at 209.  A second teacher, Mrs. Nation, placed B.S.P. in the "clinically significant" range in the school problems composite, the "at risk" range in

the externalizing problems, behavioral symptoms, and adaptive skills composites, and in the average range in the internalizing problems composite. *Id.* at 209-10. In contrast, plaintiff and B.S.P. each placed B.S.P. in the average range in all composites. *Id.* at 210.

Additionally, as part of her 2011 MET evaluation, B.S.P. was administered the Wechsler Intelligence Scale for Children, Fourth Edition ("WISC-IV"), which provides "estimates of cognitive ability in four facets of intelligence": verbal comprehension, perceptual reasoning, working memory, and processing speed. *Id.* at 211. B.S.P.'s composite scores on the WISC-IV were as follows:

> Verbal Comprehension: 69, "extremely low range (2nd percentile)";
> Perceptual Reasoning: 82, "low average range (12th percentile)";
> Working Memory: 71, "borderline range (3rd percentile)";
> Processing Speed, 70, "borderline range" (no percentile given).

*Id.* at 211-12.

In March 2012, B.S.P.'s special education teacher, Linda Jardine, completed a teacher questionnaire on B.S.P.'s behalf. R. at 139-146. Ms. Jardine rated B.S.P. as having "a very serious problem" in 9 of 10 subject areas related to acquiring and using information.[2] With respect to "attending and completing tasks," Ms. Jardine stated that

---

[2]Ms. Jardine opined that B.S.P. had a "very serious problem" in the areas of comprehending oral instructions, understanding school and content vocabulary, reading and comprehending written material, comprehending and doing math problems, providing organized oral explanations and adequate descriptions, expressing ideas in written form, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions. R. at 140. Ms. Jardine opined that B.S.P. has only a "slight problem" understanding and participating in class discussions. *Id.*

B.S.P. had a "serious problem" in 7 of 13 areas,[3] and an "obvious problem" in three areas.[4]  *Id.* at 141.  In each of the areas related to attending and completing tasks where Ms. Jardine noted either an obvious or a serious problem, she opined that the problem manifests itself daily.  *Id.*  In explaining her responses to the questionnaire, Ms. Jardine stated that B.S.P. "often refuses to work in the regular classroom," and that "[a]t least once a week, her teacher sends her to the office to work, but [she] isn't able to work independently."  *Id.*

In fourth grade, B.S.P. showed "minimal growth in understanding 3rd-4th grade material without teacher support," could "do context clues of 2nd grade materials with 90% accuracy," and could answer "3rd grade material with 60% accuracy with no support."  R. at 159.  B.S.P.'s teacher reported that she "struggles with tests, disrupts class, cannot remember previously taught information and that class discussions are difficult," but that she had shown "more effort as she matures."  *Id.*  B.S.P.'s NWEA scores during the fall of 2013, when she was in fourth grade, placed her in the second percentile in reading, the fourth percentile in writing, and the first percentile in math.  *Id.* at 13.

In June 2012, Dr. Richard Madsen completed a psychological evaluation of

---

[3]Ms. Jardine opined that B.S.P. had a "serious problem" paying attention when spoken to directly, focusing long enough to finish assigned activity or task, refocusing to a task when necessary, carrying out multi-step instructions, completing class/homework assignments, completing work accurately without careless mistakes, and working at a reasonable pace/finishing on time.  R. at 141.

[4]Those three areas are: carrying out single-step instructions, changing from one activity to another without being disruptive, and organizing her own things or school materials.  R. at 141.

B.S.P.  R. at 237-39.  Dr. Madsen observed that B.S.P. was oriented as to person, place, and time, was able to recall the year, the date, the day of the week, and the name of the president, that her thought process was nonpsychotic "but somewhat slow," and her thought content was logical and relevant.  *Id.* at 238.  At her examination, B.S.P. was able to recall three of three objects on immediate recall and two of three after five minutes, could recall four digits forward and three digits backwards, which Dr. Madsen noted was "slightly impaired."  *Id.* at 239.  Dr. Madsen diagnosed B.S.P. with a developmental learning disorder, not otherwise specified, and assessed her global assessment of functioning ("GAF") at 60.[5]  *Id.*

The Court first evaluates whether the ALJ's decision that B.S.P.'s impairments do not satisfy Listing 112.02 is supported by substantial evidence.  Listing 112.02 covers organic mental disorders in children, including "[a]bnormalities in perception, cognition, affect, or behavior associated with dysfunction of the brain."  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 112.02.  Listing 112.02 is divided into two paragraphs, Paragraphs A and B, and the listing is met when the requirements for both paragraphs are satisfied.  *Id.*  Paragraph A requires "[m]edically documented persistence" of at least one of ten conditions.  *Id.*, § 112.02(A).  Paragraph B requires, for children age 3 to 18, at least two of the following:

---

[5]"The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012) (Citing American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32, 34 (Text Revision 4th ed. 2000)).  A GAF score of 60 indicates "[m]oderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning[.]"  *Id.*

a.  Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

d. Marked difficulties in maintaining concentration, persistence, or pace.

*Id.* § 112.02(B)(2).

The ALJ found that B.S.P. suffered from one of the Paragraph A conditions, namely, memory impairment, though the ALJ noted that Dr. Madsen opined that B.S.P. had only "slight impairment."  R. at 35.[6]  The ALJ did not discuss the impairments in Paragraph B directly, but instead stated that they were "similar to but less comprehensive than the six functional equivalence domains" specified in 20 C.F.R. § 416.926a(b) and relied on his finding that B.S.P. only had a marked limitation in one of those six domains, namely, acquiring and using information.  *Id.* at 37-42.  *Id.*[7]

---

[6]Plaintiff argues at length that the ALJ erred in finding that B.S.P. did not meet any of the Paragraph A criteria.  Docket No. 15 at 24-28.  Plaintiff misconstrues the ALJ's opinion.  Although the ALJ noted that plaintiff's memory impairment was slight, he acknowledged that its existence is supported by medical evidence.  R. at 35.

[7]The ALJ found that B.S.P. had a marked limitation in the domain of acquiring and using information, but less than marked limitations in the remaining domains.  R. at

While the ALJ is correct that the six functional equivalence domains are similar in some respects to the four impairments specified in Paragraph B of Listing 112.02, the ALJ may not simply disregard the Paragraph B impairments and rely on his discussion concerning the functional equivalence domains.  *Cf. Cruz v. Colvin*, 2015 WL 5768384, at *10 (D. Conn. Oct. 1, 2015) (requiring that the ALJ "specifically set forth his findings" as to Listing 112.02 on remand in addition to considering the functional equivalence domains).  Although courts have held that, since several of the listings for childhood mental impairments have identical "Paragraph B" requirements, a Paragraph B finding as to one such listing is sufficient for any of the others, *see M.A.S.H. v. Colvin*, 2015 WL 7176259, at *4 (S.D. Ind. Nov. 9, 2015); *Guthrie v. Astrue*, 2011 WL 3041365, at *12 (N.D. Ill. July 22, 2011), the Court is unaware of any authority that allows an ALJ to disregard the listings entirely in favor of the functional equivalence domains.

Of particular concern is the ALJ's finding regarding the second functional equivalence domain, attending and completing tasks, which is most closely analogous to the fourth Paragraph B impairment, "[m]arked difficulties in maintaining concentration, persistence, or pace."  The Paragraph B impairment uses the disjunctive

---

37-42.  Although the ALJ did not specify which of his conclusions concerning functional domains corresponded with findings concerning the Paragraph B impairments, the Court infers that the ALJ intended his finding as to the second domain (attending and completing tasks) to correspond to the fourth impairment (maintaining concentration, persistence, or pace), the third domain (interacting and relating with others) to correspond to the second impairment (age-appropriate social functioning), and the fifth domain (caring for yourself) to correspond with the third impairment (age-appropriate personal functioning).  Thus, the Court interprets the ALJ's decision as finding that B.S.P. has a marked impairment in cognitive/communicative function, but does not have a marked impairment in any of the other categories described in Paragraph B.

"or." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 112.02(B)(2)(d). The ALJ, therefore, must

make specific findings on whether B.S.P. has marked limitations in either maintaining

concentration, maintaining persistence, or maintaining pace. *Cf. Mayfield v. Barnhart*,

2003 WL 223310, at *8 (N.D. Ill. Jan. 30, 2003) (where a listed impairment is written in

"expressly disjunctive terms," it is "error for the ALJ to fail to consider whether Plaintiff's

condition met the requirements of each of the subsections for which there was any

evidence in the record"). The corresponding functional equivalence domain requires no

such specific evaluation and the ALJ performed none. The functional equivalence

analysis is intended to assess "the interactive and cumulative effects" of a child's

impairment, including those impairments that are not severe. 20 C.F.R. § 416.926a(a).

The "attending and completing tasks" domain requires the ALJ to consider generally

"how well [a claimant is] able to focus and maintain [her] attention, and how well [she]

begin[s], carr[ies] through, and finish[es her] activities, including the pace at which [she]

perform[s] activities and the ease with which [she] change[s] them." *Id.* § 416.926a(h).

In discussing the "attending and completing tasks" domain in general terms, the ALJ

made no specific findings as to B.S.P.'s abilities in maintaining concentration,

persistence, or pace as required by Listing 112.02(B)(2). The ALJ cited generally to

Ms. Jardine's questionnaire as supporting only mild to moderate limitations in this

domain, R. at 39, but the ALJ did not discuss any of Ms. Jardine's specific opinions,

several of which appear consistent with marked limitations in "maintaining

concentration, persistence, or pace." In particular, Ms. Jardine opined that B.S.P. has

"serious problem[s]" that manifest themselves daily in paying attention when spoken to,

focusing long enough to finish assigned activities, refocusing on tasks, carrying out

11

multi-step instructions, and working at a reasonable pace.  R. at 141.  Thus, the Court

finds that the ALJ's finding that B.S.P. does not meet Listing 112.02 is not supported by

substantial evidence.  Remand is therefore appropriate.

Remand is appropriate for the additional reason that the ALJ's findings

concerning the first two equivalence domains are not supported by substantial

evidence.  With respect to the first domain, acquiring and using information, the ALJ did

not cite to any specific evidence in support of his finding that B.S.P.'s limitation was

marked rather than extreme.  The ALJ merely stated that B.S.P. "has a learning

disorder but is not mentally retarded," noted that B.S.P. receives special education

support, and summarized plaintiff's testimony that B.S.P. is "improving but is not yet

where she needs to be."  R. at 38.  This is insufficient and does not reflect that the ALJ

properly considered all relevant evidence.  In particular, the ALJ does not discuss the

relevant portion of Ms. Jardine's questionnaire – which the ALJ relied on in his finding

as to the second domain – in which she opined that B.S.P. has a "very serious problem"

in 9 of the 10 areas relevant to this domain.  R. at 140.  The ALJ similarly failed to

discuss any of the extensive test results in the record, including the NWEA assessment,

which placed B.S.P. in the first percentile in various areas at various times, R. at 207, or

the WISC-IV, which placed B.S.P. in the "extremely low range" of verbal comprehension

and the "borderline range" in working memory and processing speed.  *Id.* at 211-12.

The ALJ's failure to discuss any evidence in support of his finding is grounds for

remand.  While the "ALJ is not required to discuss every piece of evidence," he must

discuss "the uncontroverted evidence he chooses not to rely upon, as well as

significantly probative evidence he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10

12

(10th Cir. 1996).  The ALJ's failure to do so in this case precludes meaningful review of his finding.  *Cruz*, 2015 WL 5768384, at *5 (remanding where "[t]he ALJ's decision does not sufficiently address or weigh the pertinent and conflicting evidence of record," including teacher questionnaires and school records).[8]

For the same reason, the ALJ's determination that B.S.P. has only mild to moderate limitations in the "attending and completing tasks" domain is not supported by substantial evidence.  The Commissioner argues that the record supports the ALJ's finding, and cites evidence that B.S.P. had no difficulties playing sports or playing with other children and that her mother described her as "self-motivated."  Docket No. 16 at 14.  This evidence was not discussed by the ALJ, however.  Rather, the ALJ cited a single piece of evidence, Ms. Jardine's questionnaire, and stated that it was "not inconsistent" with plaintiff's testimony and supported mild to moderate limitations.  R. at 39.  The ALJ's decision does not reflect that he considered any of B.S.P.'s school records, including her MET evaluation or the results of the extensive testing performed on her.  In particular, both teachers who completed the BASC-2 assessment opined that B.S.P. had "clinically significant" attention problems, suggesting a "high level of maladjustment" in an area relevant to the "attending and completing tasks" domain.  *Id.*

---

[8]The Commissioner argues that B.S.P.'s verbal comprehension I.Q. score of 69 supports a finding of marked rather than extreme limitations in this domain because it is more than two standard deviations but less than three standard deviations below the mean.  Docket No. 16 at 12.  The ALJ did not mention B.S.P.'s I.Q. as a justification for his finding of marked rather than extreme limitations in acquiring and using information, however.  The Court, therefore, may not consider this argument.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir. 2004) (an ALJ's decision must be evaluated "based solely on the reasons stated in the decision" and post hoc justifications for the decision are prohibited).

at 208-10.  Mrs. Nation also placed B.S.P. in the "clinically significant" range with respect to study skills, while B.S.P.'s homeroom teacher placed her in the "at risk" range in this category.  *Id.* at 209-10.  Further B.S.P.'s results on the WISC-IV placed her in the "borderline range" with respect to processing speed.  As discussed with respect to the first domain, the ALJ's failure to discuss evidence inconsistent with his "mild to moderate" limitations finding in this domain and to explain what, if any, weight he gave to this evidence precludes the Court from conducting a meaningful review of his decision.  On remand, the ALJ should provide specific reasons linked to evidence in the record for his findings as to each functional equivalence domain and should discuss his reasons for disregarding any evidence that weighs against such findings.

Given the Court's finding that the ALJ's decisions concerning Listing 112.02 and the first two functional equivalence domains are not supported by substantial evidence, the Court need not address the ALJ's findings that B.S.P. did not meet or equal Listing 112.05 or that she has less than marked limitations in the remaining functional equivalence domains.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("we will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand").

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that B.S.P. is not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

DATED March 30, 2016.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge